UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jill Antipas, | CIVIL ACTION |
| Plaintiff, | |
| v. | CASE NO. |
| FMS Inc., an Oklahoma Corporation. and State Farm Bank, F.S.B. | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT FOR RELIEF PURSUANT
TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

NOW COMES the Plaintiff, JILL ANTIPAS ("Plaintiff"), by and through her attorneys, SULAIMAN LAW GROUP, LTD. ("Sulaiman"), complaining of the Defendants, FMS, Inc. an Oklahoma Corporation ("FMS") and State Farm Bank, F.S.B. ("State Farm"), as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action for damages for FMS's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA"); FMS's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/2 ("ICFA") and for damages for FMS's violations of the Bankruptcy Discharge Injunction pursuant to Title 11 U.S.C. §524.

2. Plaintiff also brings this action for damages for State Farm's violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA"); State Farm's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §505/2 ("ICFA") and for damages for State Farm's violations of the Bankruptcy Discharge Injunction pursuant to Title 11 U.S.C. §524.

1

## JURISDICTION AND VENUE

3. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692, 28 U.S.C. §§ 1331, 1337, as the action arises under the laws of the United States, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Northern District of Illinois and a substantial amount of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

## PARTIES

5. Plaintiff is a natural person residing at 1440 Jefferson Street, Unit 2E, Des Plaines, Illinois, 60016, and is a "consumer" as defined by the FDCPA, 15 U.S.C. §1692 a(3) and as defined by ICFA, 815 ILCS 505/2(e).

6. At all times relevant to this action FMS was a corporation with its principal place of business at 4915 S Unionave, Tulsa, Oklahoma, 74107.

7. FMS is in the business of collecting debts in the State of Illinois and was registered as a corporation on March 11, 2003, File Number 62733438.

8. FMS's Illinois registered agent's address is Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

9. FMS is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692 a(6) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

10. At all times relevant to this action, State Farm is a bank governed by the FDIC with its principal place of business at One State Farm Plaza E-6, Bloomington, IL 61710.

11. State Farm is a debt collector as defined by the FDCPA, 15 U.S.C. § 1692 a(6) because it is a default servicer who regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

### FACTS SUPPORTING CAUSE OF ACTION

12. On or about December 20, 2006, Plaintiff purchased residential property commonly known as 712 3rd Street, Bryon, Minnesota 55920. Mortgage Electronic Registration Systems, Inc. ("MERS") held the Mortgage for Countrywide Bank, N.A. *See* attached Exhibit A, a true and correct copy of the original Mortgage filed with the Office of County Recorder, Olmsted County, Minnesota Document Number A-1123559)

13. On May 7, 2008, Plaintiff filed a Chapter 7 petition in the United States Bankruptcy Court, District of Minnesota, Case Number 08-32212, invoking the protections of the automatic stay pursuant to 11 U.S.C. §362. *See* attached Exhibit B, a true and correct copy of Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines.

14. On May 10, 2008, the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines was mailed to all creditors listed in the Plaintiff's Bankruptcy by the Bankruptcy Noticing Center. Included in this list of Creditors was Countrywide Home Loans. *See* attached Exhibit C, a true and correct copy of Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines.

15. On May 17, 2008, the Amended Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines was mailed to all creditors listed in the Plaintiff's Bankruptcy by the Bankruptcy Noticing Center. Included in this list of Creditors was Countrywide Home Loans. *See* attached Exhibit D, a true and correct copy of the Amended Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines.

16. On June 9, 2008, Plaintiff, through her Bankruptcy Counsel, mailed a letter and Notice of Change in 341 Meeting of Creditors date. *See* attached Exhibit E, a true and correct copy of the Letter with Attachments sent by Stephanie M. Claugherty of Kingsbury Law Office.

17. On August 12, 2008, Plaintiff received an Order of Discharge in her Bankruptcy Case which was mailed to all creditors listed in the Bankruptcy Case, including Countrywide, by the Bankruptcy Noticing Center. *See* attached Exhibit F, a true and correct copy of the Order of Discharge.

18. On or About April 27, 2009, Countrywide Bank, N.A. merged into Bank of America, N.A. whose loans were, upon information and belief, serviced by BAC Home Loans Servicing, LP. The knowledge of Countrywide Bank, N.A. of the Bankruptcy Discharge transferred to Bank of America, N.A. upon transfer of the file. (Upon information and belief, subsequent to April 27, 2009 and prior to December 2012, BAC Home Loans Servicing merged into Bank of America, N.A.)

19. On August 6, 2009, BAC Home Loans Servicing, LP allegedly sold and/or transferred the underlying "discharged" loan to Central Loan Administration and Reporting ("CENLAR"). The knowledge of the Bankruptcy Discharge was transferred to CENLAR with the sale and/or transfer of the underlying account. CENLAR mailed allegedly sent correspondence to Plaintiff regarding the sale of the loan, however, Plaintiff no longer resided at that subject property and therefore never received the correspondence from CENLAR. *See* attached Exhibit G, a copy of the letter allegedly sent by CENLAR to Plaintiff. This letter was provided by State Farm in a response to Plaintiff disputing the underlying balance.

20. On January 7, 2013, State Farm mailed correspondence to the Plaintiff to an address where she has not resided for over four years. The letter alleges that State Farm purchased the

subject loan from CENLAR in December 2012. The knowledge of the Bankruptcy Discharge was transferred to State Farm with the sale and/or transfer of the underlying account. *See* attached Exhibit H, a copy of the letter sent by State Farm to Plaintiff. This letter was provided by State Farm in a response to Plaintiff disputing the underlying balance.

21. Upon information and belief, State Farm employed FMS to collect on the discharged debt.

22. On February 17, 2014, FMS, Incorporated mailed a letter to Plaintiff at her current residence in Des Plaines, Illinois. This letter states that FMS is collecting on a debt owed to State Farm. This letter states that Plaintiff owes the amount of $27,685.62 to State Farm F.S.B. *See* attached Exhibit I, an true and correct copy of the letter mailed by FMS, Incorporated.

23. The February 17, 2014, letter includes a payment coupon indicating that a payment must be made. *Id.*

24. The collection letter concedes that FMS is a debt collector. *Id.*

25. The letter also lists its client's name as State Farm, and offers Plaintiff a 70% discount, but fails to identify the original creditor. *Id.*

26. The letter also includes a detachable payment slip with FMS's address to be mailed back to FMS with payment.

27. On June 16, 2014, Plaintiff received response to her dispute letter dated April 7, 2014. This response denies any wrong doing on the part of State Farm. *See* attached Group Exhibit J, a true and correct copy of the letter received by Plaintiff with all attachments.

28. In addition to FMS's collection letter, Plaintiff also received telephone calls from FMS demanding payment on the discharged debt.

29. FMS's correspondences to Plaintiff were highly upsetting to Plaintiff as the subject debt was discharged in the Plaintiff's bankruptcy.

30. Concerned about having to pay on a bill that Plaintiff believed was included and discharged in her Chapter 7 bankruptcy, Plaintiff sought the assistance of counsel to ensure that FMS's collection efforts cease.

31. Plaintiff, as a direct result of the conduct of Defendants', has suffered a great deal of stress.

32. Plaintiff has expended numerous hours consulting with her attorneys as a result of Defendants' deceptive collection actions.

33. Plaintiff has suffered mental anguish and emotional distress due to Defendants' demand on an obligation that was discharged in Plaintiff's Chapter 7 bankruptcy.

### COUNT I – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT AGAINST FMS AND STATE FARM

34. Plaintiff repeats and realleges paragraphs 1 through 33 as though fully set forth herein.

35. FMS and State Farm violated 15 U.S.C. §§1692 c(a)(2), e(2), e(10), f, (b)(6) and g(a)(2) through its debt collection efforts.

36. FMS and State Farm violated 15 U.S.C. §1692e(2) when they misrepresented the character, amount, or legal status of the subject debt as the subject debt was not owed at the time FMS demanded payment of the subject debt as the subject debt was discharged in Plaintiff's Chapter 7 Bankruptcy.

37. FMS and State Farm violated 15 U.S.C. §1692e(10) when they falsely represented that the subject debt was owed at the time of the demand.

6

38. FMS and State Farm violated 15 U.S.C. §1692 f by employing unfair and unconscionable means to collect the subject debt as the Plaintiff was no longer obligated to pay the subject debt by virtue of her bankruptcy discharge.

39. FMS and State Farm violated 15 U.S.C. §1692(b)(6) when they communicated with Plaintiff after having actual knowledge that the Plaintiff is represented by counsel through her bankruptcy case.

40. FMS and State Farm violated 15 U.S.C. §1692g(a)(2) when it failed to identify the original creditor.

41. As pled in above, Plaintiff was harmed by FMS' and State Farm's unfair and deceptive practices.

42. Upon information and belief, FMS and State Farm have not implemented proper procedures to avoid collection on discharged debts.

43. Upon information and belief, it is part of FMS's and State Farm's normal business practices to continue attempting to collect discharged or otherwise extinguished debts.

WHEREFORE, Plaintiff, JILL ANTIPAS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II -- VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AGAINST FMS AND STATE FARM

44. Plaintiff restates and realleges paragraphs 1 through 33 as though fully set forth herein.

45. FMS violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in its attempt to collect a discharged or otherwise extinguished debt from Plaintiff.

46. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

47. FMS's and State Farm's attempt to collect a debt is part of the conduct of any trade or commerce.

48. These demands represent the use of deception, fraud, and false pretense in an attempt to collect a debt because it was not owed at the time the demand for payment were made by FMS and State Farm.

49. FMS's and State Farm's demands for payment on the subject debt, which was duly scheduled in Plaintiff's bankruptcy, is unfair and deceptive.

50. These demands represent the use of deception, fraud, and false pretense in an attempt to collect a debt because it was not collectable at the time the demand for payment was made by FMS and State Farm.

51. FMS' and State Farm's demands for payment were made with knowledge of the bankruptcy case filing and were unfair and misleading to Plaintiff.

52. ICFA was designed to protect consumers from the very acts committed by FMS and State Farm.

53. FMS and State Farm intended that Plaintiff rely on its misrepresentations.

54. ICFA further states:

Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper.

815 ILCS 505/10a

55. As pled above, Plaintiff was harmed by FMS's and State Farm's unfair and deceptive practices.

56. Moreover, upon information and belief, these unfair and deceptive practices are part of a pattern and practice of behavior in which FMS and State Farm routinely engages as part of its business model.

57. As such, Plaintiff is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff, JILL ANTIPAS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. Awarding the Plaintiff costs and reasonable attorney fees; and

d. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III -- VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION AGAINST FMS AND STATE FARM

58. Plaintiff restates and realleges paragraphs 1 through 33 as though fully set forth herein.

59. Plaintiff's debt to Countrtywide Home Loans was discharged upon the entry of the Bankruptcy Discharge Order entered on August 12, 2008.

60. Defendants were collectively apprised of Plaintiff's Chapter 7 case on multiple occasions.

61. Despite having notice and actual knowledge that the subject debt was discharged, FMS and State Farm failed to cease collection efforts on a discharged debt when it attempted to collect the uncollectable debt from Plaintiff.

62. Quite shockingly, these brazen actions have been committed by a sophisticated collection entity that knew or should have known its conduct violates bankruptcy rules and orders.

63. However, FMS and State Farm did not practice due diligence before unlawfully attempting to collect on Plaintiff's uncollectable debt.

64. It is nearly a factual impossibility that FMS and State Farm are not familiar with bankruptcy laws and its actions, notwithstanding such knowledge, are indicative of its willful disregard of the Court's orders.

65. FMS and State Farm, as a presumably highly sophisticated and experienced collection agencies, should have implemented procedures and trained its employees to both discourage and prevent willful violations of the Bankruptcy Discharge order. However, the egregious conduct by FMS and State Farm, at the Plaintiff's expense, establishes otherwise.

66. As pled above, Plaintiff was harmed by FMS and State Farm's unfair and deceptive practices.

67. FMS and State Farm's actions are in civil contempt of the Bankruptcy Discharge Order and FMS and State Farm should be held accountable accordingly.

WHEREFORE, Plaintiff, JILL ANTIPAS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. That this Honorable Court enter an order holding FMS and State Farm in civil contempt of the Bankruptcy Discharge Order pursuant to Title 11 U.S.C. §524;

b. That this Honorable Court enter an order directing FMS and State Farm to pay a sum determined by the Court to the Plaintiff for her actual damages as a result of the civil contempt of the Bankruptcy Discharge Order pursuant to Title 11 U.S.C. §524;

c. That this Honorable Court enter an order directing FMS and State Farm to pay a sum determined by the Court to the Plaintiff for all reasonable legal fees and expenses as a result of the civil contempt of the Bankruptcy Discharge Order pursuant to Title 11 U.S.C. §524;

d. That this Honorable Court enter an order directing FMS and State Farm to pay a sum determined by the Court to the Plaintiff for punitive damages the civil contempt of the Bankruptcy Discharge Order pursuant to Title 11 U.S.C. §524; and

e. That Plaintiff be provided such other and further relief as the Court may deem just and proper.

Dated: November 19, 2014        Respectfully Submitted,

/s/ Penelope N Bach
Penelope N. Bach, Esq. ARDC#62846598
Counsel for Plaintiff
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181